IN THE MATTER OF THE PETITION BY THE TOWNSHIP OF WAYNE FOR APPROVAL TO ESTABLISH A NEW GRADE CROSSING OVER THE TRACKS OF THE ERIE LACKAWANNA RAILWAY COMPANY'S GREENWOOD LAKE BRANCH, DUE TO CONSTRUCTION OF PROPOSED HAUL ROAD.

Superior Court of New Jersey
Appellate Division

Argued October 27, 1975—Decided November 17, 1975.

Before Judges FRITZ, SEIDMAN and MILMED.

*Mr. Lawrence D. Katz* argued the cause for petitioner-appellant (*Mr. Robert S. Moraff,* attorney).

*Mr. Vincent E. McGowan* argued the cause for respondent Erie Lackawanna Railway Company.

*Mr. Richard L. Voliva, Jr.,* Deputy Attorney General, argued the cause for respondent Commissioner of the Department of Transportation (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Richard M. Conley,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by

MILMED, J. A. D. Appellant Township of Wayne (township) petitioned the Department of Transportation (Department) for permission to install a grade crossing at Haul Road and the tracks of the Erie Lackawanna Railway Company (railroad) in the township. According to the petition the township was at the time "involved in the construction, reconstruction and installation of a drainage system and realignment of * * * Haul Road * * *," and the construction of the proposed grade crossing had "the concurrence of the Erie Lackawanna Railroad Company."

A hearing on the petition was held before the Chief of the Bureau of Utilities in the Department, who served as hearing examiner.[1] It appears from the testimony at the hearing that the township intends by the project to provide a drainage system to alleviate flooding and also to provide additional access to industrial projects and to "the Old Wayne area."[2]

The township's petition makes no reference to the cost or method of financing the project. It is, however, apparent from the testimony at the hearing that the municipality was proceeding on the assumpton that it was to assume the cost of the grade crossing.[3] A grade crossing engineer of

---

[1]*N. J. S. A.* 27:1A–62 (*L.* 1972, *c.* 169, § 1) provides that:

The functions, powers and duties of the Board of Public Utility Commissioners with respect to elimination and regulation of railroad grade crossings and protective devices in connection therewith and the regulation of bridges or passages over or under any railroad or right-of-way pursuant to *R. S.* 48:2–28, *R. S.* 48:2–29, and articles 10, 11 and 12 of chapter 12 of Title 48 of the Revised Statutes are transferred to and shall be exercised and performed by the Commissioner and Department of Transportation.

[2]An area "subject to frequent flooding." Upon completion of the project there would be another access road (in addition to the existing one) to the Old Wayne area and "in times of flooding, these two roads could be used to evacuate people and to carry emergency vehicles into the area."

the railroad testified that if the railroad were required by the Department to contribute funds for the grade crossing, his "recommendation to Management would be that we refuse the acceptance of the Commissioner's Order to spend any funds on this project."

Following the hearing the Commissioner of the Department of Transportation issued the Department's decision and order granting, "in consonance with the provisions of *N. J. S. A.* 48:2–28," permission to the township "to construct a crossing at grade of Haul Road and the tracks of the Greenwood Lake Branch of the Erie Lackawanna Railway Company"; directing the railroad "in accord with the provisions of *N. J. S. A.* 48:2–29 to install automatic flashing light signals and bell, with same being activated by a motion detector system," and directing the township "to install Railroad Advance Warning Signs and Railroad Approach Pavement Markings in strict conformity to the 'Manual on Uniform Traffic Control Devices for Streets and High-

---

[3]When asked at the hearing why a proposed agreement between the township and the railroad in regard to the grade crossing had not been signed, the project manager for the Township stated: "My impression is that, I believe, the last item of that agreement requires a $1,500 a year fee be paid for maintenance forever and, to my understanding, that is the Mayor's objection or stumbling block at this point."

The brief submitted on behalf of respondent Erie Lackawanna Railway Company points out in part that:

In reliance on execution of the agreement the railroad waived its right to present testimony before the Department of Transportation in opposition to the Township's petition (Pa1).

In view of the bankruptcy reorganization proceedings of the railroad pending in the Federal Court in Cleveland (T28–21), and the provisions of U. S. C. A. Title 11, Section 205 (c)(2) requiring the consent of the Trustees or appropriate findings of the Interstate Commerce Commission before any expenditure of funds of the railroad could be required to comply with an order of a State regulatory body, and in view of the railroad's agreement not to oppose the Township's petition, it is understandable why the Township would undertake such an agreement with the Railroad.

ways.' "[4] The Department's permission was granted subject to the following conditions:

1. The entire project shall be accomplished at no cost to the Department of Transportation and at no cost to the Railroad.
2. The petitioner shall notify the Department of Transportation when the project is completed.

The township appealed from that portion of the decision and order "which requires the Township of Wayne to pay for the required safety devices and the finding of the Department of Transportation that said improvements are necessary." It now contends that the Department's "imposition of the entire cost of constructing the grade crossing and the protective devices associated therewith upon the petitioner is contrary to law." Both the railroad and the department argue, in effect, that the township, at the Department hearing, waived any right to contribution by the Department and railroad and is accordingly estopped from now changing its position and seeking such contribution.[5]

 The township clearly lacks authority to bind itself to an agreement providing for its assumption of the cost of construction of the grade crossing and installation of protective devices. See *N. J. S. A.* 48:12–79; *N. J. S. A.* 48:12–49.1. As pointed out in *Sinclair Refining Co. v. Bergen Cty.,* 103 *N. J. Super.* 426, (App. Div. 1968), certif. den. 53 *N. J.* 272 (1969):

---

[4]Clearly inherent in the decision and order is the Commissioner's determination that the project is needed.

[5]The railroad also argues that "The criteria for judicial review of an administrative proceeding are not shown to exist." We find no merit in this contention. We are here specifically concerned with "whether the result is within and in accordance with the legislative grant and the standards prescribed thereby * * *." *In re Application of Hackensack Water Co.,* 41 *N. J. Super.* 408, 418 (App. Div. 1956).

It is axiomatic that municipal bodies in this State have no powers other than those delegated by the Legislature, and must perform their prescribed activities within the statutory ambit. *Scatuorchio v. Jersey City Incinerator Authority,* 14 *N. J.* 72, 85 (1953). Although a public body may make contracts, it can only do so within its express or implied authority. *Midtown Properties, Inc. v. Madison Tp.,* 68 *N. J. Super.* 197, 208 (Law Div. 1961) affirmed 78 *N. J. Super.* 471 (App. Div. 1963). An act wholly beyond the jurisdiction of a municipal corporation is *ultra vires* in the primary sense and utterly void. *Summer Cottagers' Ass'n of Cape May v. City of Cape May,* 19 *N. J.* 493, 504 (1955) ; *Thornton v. Village of Ridgewood,* 17 *N. J.* 499, 508 (1955) ; *Bauer v. City of Newark,* 7 *N. J.* 426, 434 (1951) ; *City Affairs Committee of Jersey City v. Board of Com'rs of Jersey City,* 134 *N. J. L.* 180, 184 (E. & A. 1946). [at 433]

The statutes applicable here are to be found in Article 11 of Chapter 12 of *Title* 48 of the *Revised Statutes, N. J. S. A.* 48:12–49 *et seq.,* "the apportionment of expenses" for the project being specifically prescribed by *N. J. S. A.* 48:12–49.1. We accordingly conclude that the proposed agreement between the township and the railroad would be *ultra vires* and void. In the circumstances the equitable doctrine of estoppel cannot be invoked against the municipality. *Slurzberg v. Bayonne,* 29 *N. J.* 106, 115 (1959) ; *Sinclair Refining Co. v. Bergen Cty., supra.*

Since the hearing had proceeded on the assumption that the township would pay the full cost of construction of the grade crossing, the decision and order are reversed and the matter is remanded to the Department and Commissioner of Transportation for a new hearing, and for new findings and conclusions consistent with this opinion. We do not retain jurisdiction.